### No. 9555.

### JOSEPH H. HYNSON VS. WALTER PUGH AND MRS. E. J. EWING.

The owner and the pledgee of certain notes entered into a contract with a third person, by which the latter agreed to pay a certain sum for one of the notes, past due, on a fixed day, and the pledgee bound himself to hold the note and to present it on that day, and to deliver it to the third person upon payment of the sum agreed on that day.

Held, that this contract did not create a mere continuing obligation with a term, but was a commutative contract under which the pledgee was bound to present the note on the

day fixed, and the third person was only bound to pay, if so presented. The pledgee had only bound herself to deliver, in case on presentment the payment was made on that date. Had the note been presented on the day fixed and not paid, the party could not have claimed delivery on subsequent payment; and it is a necessary sequence of this that the pledgee, not having presented the note according to the contract, could not demand payment on a subsequent presentment.

The owner of the note having been guilty of no fault, and having lost the benefit of the third person's obligation by the fault of the pledgee, the latter is bound to make good the damage occasioned him thereby.

A PPEAL from the Civil District Court for the Parish of Orleans. Rightor, J.

---

### Gibson, Hall & Montgomery for Plaintiff and Appellant:

The sale of a note for future delivery which is held in pledge, to which a pledgee agrees and binds himself to present the note on the day fixed for the delivery, and to deliver it upon payment of the purchase price, and then credit the note to secure which it was pledged, with the amount of the sale, binds the pledgee for the amount of the purchase price to the pledgor, and relieves the pledgor from paying such sum to the pledgee, where it is established that the purchaser would have paid the price agreed upon on the day fixed, if the pledgee had presented and delivered the note to the purchaser. 29 Ann. 663; 28 Ann. 838; 13 Ann. 361; 10 Ann. 160; 12 R. 423; C. C 2991-92; 4 Ann. 300; 27 Ann. 110; 18 Ann. 27; 28 Ann. 946.

The agreement by the pledgee and pledgor to sell a pledged note, to which a third person, the purchaser, agrees, modifies the original contract of pledge and obliges the pledgee to deliver the note, upon payment of the purchase price, on the day fixed. The pledgee's failure or refusal to deliver it does not destroy the effect of the sale and reinstate the original pledge, and enable the pledgee to sell the pledged note at once to a fourth party. 1 Ann. 344; 18 L. 553; 20 Ann. 570; C. C 2394 (2315), 2316; C. C. 1902, 3134.

An individual who undertakes to secure another's rights because of the belief that he has been in fault, incurs a legal obligation. 5 M. 194; 12 R. 428; 8 R. 157.

---

### Alfred Grima for Defendant and Appellee:

Mrs. Ewing, by her co-defendant Pugh. as special agent, made to the plaintiff a loan of $7,272, evidenced by said plaintiff's note and secured by two collateral mortgaged notes. V. and A. Meyer & Co. entered into a written agreement to give $5,270 for one of the collaterals on the 15th of January, 1885. The said collateral being presented to them on the 19th of January only, Meyer & Co claimed release, and plaintiff's discharge from his principal debt to the extent of $5,270.

The defendant, Pugh, acted throughout the matter merely as agent, and cannot be brought to account to plaintiff for his acts of agency, the principal being a party to the suit.

As regards the charge in the petition that Pugh secured the plaintiff against the consequences of the failure of presentment of the collateral to Meyer & Co. on the 15th of January, 1885, it does not constitute a cause of action against him.

1. Because a verbal promise to pay the debt of a third person is not binding. Rev. Stat. 1443; 38 Ann. 452; Id. 532; 34 Ann. 817; C. C. 2278.

2. Because such promise would be without cause, motive, consideration or interest, and of no effect. C. C. 1893, 1896; 1 Demolombe Contracts, p. 342, et seq.

3. Because it would have been made under the erroneous belief of a pre-existing liability, resulting from the non-presentment of the said collateral on the 15th of January, 1885,

which is the only ground upon which personal liability is charged in the petition against the defendant Pugh. C. C. 1846; 34 Ann. 688, Chaffe, Syndic, vs. Scheen et al.

The said failure of presentment did not create any liability against the defendant, Mrs Ewing. The obligation of Meyer & Co. was one with a term. They could not be compelled to pay *before*, but could so be *after*, the 15th of January, 1885. C. C. 1764, § 3, 2053; 16 Laurent, 205, § 193; 2 Demolombe Contracts, § 650.

The said collateral was equally available, and Meyer & Co. equally solvent, on and after the 19th of January, 1885. Were the plaintiff's situation to be assimilated to that of a surety, he would, on paying his debt at maturity, have been subrogated to all the rights of the creditor, and to the mortgage and advantages attached to the said collateral, and could have sued Meyer & Co. C. C. 2061, 3057; 18 Ann. 652; 28 Ann. N. R; see Louque's D., p. 702, § 7; 29 Ann. 844.

Mrs. Ewing did not change any of her rights, did not discharge her debtor by novation or delegation, and looked to the obligation of Meyer & Co. as an additional advantage of which she could avail herself as she saw fit. C. C. 1190, 2192.

---

The opinion of the Court was delivered by

FENNER, J.  On July 16, 1884, Joseph H. Hynson executed and delivered to Mrs. E. J. Ewing his promissory note for $7272 74, payable to her order on February 1, 1885, and pledged for its payment two mortgage notes of $4500 each, of J. S. Butler, both dated December 18, 1881, and bearing 8 per cent interest from date, one of which had matured on February 1, 1884, and the other was to mature on February 1, 1885. The pledge conferred on the pledgee, in event of default in payment of principal note, authority to sell the pledged notes at public or private sale, without recourse to legal proceedings.

On the same day (July 16, 1884) the following agreement was executed between Hynson, Mrs. Ewing and V. & A. Meyer & Co., viz:

"NEW ORLEANS, LA., July 16, 1884.

"This agreement between Joseph H. Hynson, through his duly authorized agent, G. L. Hall, and Mrs. E. J. Ewing, through her duly authorized agent, Walter Pugh, as per power of attorney annexed, and V. & A. Meyer & Co., a commercial firm domiciled in this city, witnesseth :

"That said V. & A. Meyer & Co. agree to pay $5270 on the 15th of January, 1885, for a note signed by John S. Butler, dated December 13, 1881, for the sum of $4500, etc., maturing February 1, 1884, which note is secured by an act of mortgage, etc. * * *

"It is further agreed that Mrs. E. J. Ewing, through her said agent, Walter Pugh, shall hold the aforesaid note of John S. Butler, that fell due on January 1, 1884, under a pledge made to her to secure a debt by said J. H. Hynson, *and present it to V. & A. Meyer & Co. on January 15, 1885, and deliver it to them upon payment to her of $5270 on that date.*

Hynson vs Pugh.

"It is further agreed by J. H. Hynson that the sale and delivery of said note of John S. Butler, owned by him and pledged to said Mrs. Ewing is and shall be made on the terms and conditions herein stipulated.

(Signed)                    J. H. HYNSON, *per pro.* G. L. HALL.

V. & A. MEYER & Co.

WALTER PUGH, AGT."

The meaning of the contract and the character of Mrs. Ewing's obligations thereunder receive additional elucidation from the language of her special power of attorney to Mr. Pugh, which is as follows:

"I hereby authorize Mr. Walter Pugh to sign for me and in my stead a certain agreement to be entered into between Messrs. V. & A. Meyer, Jos. H. Hynson and myself, whereby the Messrs. V. & A. Meyer agree to pay on the 15th of January, 1885, the price and sum of $5270, for a certain mortgage note for $4500, etc. to Mr. Hynson, the owner of said note. or myself, the pledgee of said note, payment to be made on surrender of said note—my obligation in the premises being to withhold a foreclosure of the mortgage in consideration therefor, *and to hold until that time said note and tender the same to V. & A. Meyer, receive the said sum of $5270, and credit Mr. Hynson's note with that amount.*"

Mrs. Ewing failed to present the note to V. & A. Meyer & Co. on the 15th of January, 1885, and only presented it several days after that date, when V. & A. Myer & Co. refused to pay the stipulated price, claiming that they were discharged from their obligation by reason of the failure of Mrs. Ewing to present the note at the time stipulated.

Thereupon Hynson made a legal tender to Mrs. Ewing of the difference between the $5270 which should have been collected from Meyer & Co. and the amount of his principal note, and demanded the surrender to him of the said note and of the remaining mortgage note held in pledge therefor. Mrs. Ewing declined the tender, protested the principal note at its maturity on February 1 and 4, 1885, and immediately placed the two pledged notes in the hands of a broker for sale, which was effected on February 12, for a sum a trifle less than the amount due on the principal note. Hynson brings the present action against Mrs. Ewing and Walter Pugh *in solido* praying for judgment ordering them to return to him his principal note and the other mortgage note pledged therefor on his paying them the sum of $2,002 or, in the alternative, to pay to him the sum of $3,630, the difference between the value of the two pledged notes illegally sold and the amount of the principal note.

So far as the claim against Walter Pugh is concerned, we may dismiss at once. The evidence does not satisfy us that he ever acted otherwise than as agent for Mrs. Ewing or that he ever assumed any personal obligation in the premises. We have carefully weighed the parol evidence on the question, and our conclusion is so clear that it does not require more particular discussion.

As regards Mrs. Ewing, on two points the evidence in this record presents no conflict, viz:

1st. That V. & A. Meyer & Co. would have paid the $5270, as agreed by them, had the note been presented on the 15th of January, 1885.

2d. That the pledged notes were secured by first mortgage and vendor's lien on the Clio plantation in the parish of Rapides and that said property was worth more than the total amount due on said notes.

Hence, the fact and the exact measure of Hynson's loss are clearly fixed and ascertained.

The loss results directly from the non-fulfilment of the agreement of January 16. Had that agreement been executed, the $5270 would have been paid on the principal note, leaving due thereon only $2002, which Hynson would have paid, as he offered to pay, at its maturity, and would thus have received back his principal note and the unsold pledged mortgage note for $4500 and interest, worth over $5600. To make him whole he is entitled to be placed in this position, or to receive the difference between the $2002 which he would have paid and the value of the mortgage note which he should now possess; and this is exactly what his petition claims.

Now as there is no pretense that Hynson has violated any of his obligations under the agreement, or has been guilty of any fault or negligence whatever, it follows that the damage must have been occasioned by the fault of one of the other parties, either Mrs. Ewing or V. & A. Meyer & Co., and the one in fault is bound to repair it. C. C.

If the time fixed for presentment and payment was of the essence of the contract, if Mrs. Ewing was bound to present it on that day and if, in default of such presentment, Meyer & Co., were discharged from the obligation to pay, it is obvious that she was in fault and is bound for the loss. If, on the contrary, Meyer & Co.'s obligation was a mere obligation with a term only relieving them from payment until its expiration, and leaving their obligation in full force thereafter, then the presentment of the note even after the term was a sufficient discharge

of Mrs. Ewing's duty and their failure to pay was a breach of their obligation for which they would alone be liable.

We freely concede that if Meyer & Co., though bound to pay, refused to pay, there is nothing in the agreement which would affect or diminish Mrs. Ewing's right to demand full payment of Hynson's note at maturity and, in default thereof, to proceed to the enforcement of her pledge according to the terms of her contract. But if Meyer & Co. were discharged from their obligation to pay by reason of Mrs. Ewing's breach of her own obligation, she was bound to make good the loss to Hynson, and to credit on his note the sum which she should have received and had agreed to credit.

Now, when we analyze the agreement, we find the correlative obligations of the parties stated with equal distinctness, viz: 1st. V. & A. Meyer & Co., agree to pay $5,270 on the 15th of January, 1885 ; " 2d. Mrs. Ewing agrees to " present it to V. & A. Meyer & Co. on January 15, 1885, and deliver it to them upon payment to her of $5,270 on that date."

The language is too clear to require interpretation. Not only did Mrs. Ewing affirmatively bind herself to present the note on the 15th of January, but she confined and subjected her obligation to deliver the note to the condition of payment " on that date." Had she presented the note on that day, and had Meyer & Co. failed to pay, they could not have required the delivery of the note by offering payment on a subsequent day, because, by the express terms of her contract, she only consented to deliver the note " upon payment to her of $5,270 on that date."

It follows inexorably that, as Meyer & Co.'s right to claim delivery of the note, would have been forfeited by their failure to pay on presentment of the note on the 15th of January, their obligation to pay equally expired with the failure to present on that day. .

Not only is this the unequivocal import of the language of the agreement, but the situation of the parties affords an evident explanation of the reason for its adoption. The time fixed for the execution of the agreement was only fifteen days prior to the maturity of Hynson's note. Mrs. Ewing did not wish her right to proceed with the foreclosure of her pledge to be hampered or even shadowed by any inchoate rights of Meyer under a mere continuing obligation with a term. Hence she confined her obligation to deliver the note to the condition of payment on the day fixed so that, if not then paid, the matter would be at an end, and her right to proceed unquestioned. But, in thus protecting herself against Meyer & Co.'s default, she

equally bound herself to comply with her own obligation and, in discharging Meyer & Co., she must do it at her own expense and not at that of Hynson.

Counsel for defendant insists that we should precise the legal principle under which Mrs. Ewing's right to enforce her pledge was lost.

It is very clear and simple. She had bound herself to receive from Meyer & Co. and credit on Hynson's note, $5,270. She failed to receive it and discharged Meyer & Co. from the obligation of paying it, through her own fault.

This did not discharge her from the duty of making the credit any more than if she had taken the money from Meyer & Co. and then returned it to them.

Hence, when Hynson's note fell due, there remained unpaid on it only the sum of $2,002. Of this sum, Hynson made a legal tender at the maturity of the note, and this had all the effect of full payment, and rendered her further proceedings in the sale of the pledged notes wanton and illegal.

Hynson is entitled to the exact judgment prayed for in his petition, as against Mrs. Ewing.

It is, therefore, ordered, adjudged and decreed that the judgment appealed from, in so far as it is in favor of defendant, Walter Pugh, be affirmed, and that, in other respects, it be annulled, avoided and reversed, and it is now ordered that there be judgment in favor of plaintiff and against the defendant, Mrs. E. J. Ewing, condemning her to pay to plaintiff the sum of $3,630 26 with interest at the rate of eight *per cent per annum* from February 1, 1885, or to deliver to him the note for $4,500 made by John S. Butler, to his own order dated December 13, 1881, and payable February 1, 1885, secured by vendor's lien and mortgage on the Clio sugar plantation in the parish of Rapides, and also the note for $7,272 74 made by plaintiff, on plaintiff's paying to her the sum of $2,002 74. Said defendant to pay costs in both courts.